CINCINNATI RY. SUPPLY CO. v. HARTLIEB et al.

(Circuit Court of Appeals, Sixth Circuit.   June 2, 1914.)

No. 2549.

1. BANKRUPTCY (§ 345*)—SALE OF MATERIALS—FRAUD.

Where, at the time a bankrupt purchased certain materials from claimant to be paid for in cash on delivery, it had reasonable expectation of paying therefor, and later expected and promised to pay the debt out of the proceeds of a loan it was negotiating, its failure to do so did not entitle the seller to a preference on the ground that the purchase was fraudulent.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 531, 532, 534, 539, 540; Dec. Dig. § 345.*]

2. SALES (§ 196*)—TERMS—WAIVER.

Claimant sold certain materials to defendant on February 1st on cash terms, and seven days later made the second sale, a third in eight days, and a fourth in five days, without any of them being paid for. Claimant's sales agent visited the buyer's plant at least once every ten days or two weeks during a period of four months, and never during all that time did he make any demand for payment of the goods, and it was not until after the buyer had failed to keep repeated promises to pay that the claimant brought replevin just prior to the buyer's bankruptcy. Held, that such course of conduct operated as a waiver of the condition that payments should be made in cash on delivery.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 510; Dec. Dig. § 196.*]

3. SALES (§§ 82, 196*)—"REASONABLE TIME."

Reasonable time to pay for property delivered under a contract of sale means such promptitude as the situation of the parties and the circumstances of the case will allow, and does not mean indulgence in unnecessary delay or in a delay occasioned by a vain hope and fruitless effort to obtain the money from a defaulting buyer, and, when the delay is to be accounted for by such consideration, it is accepted as an acquiescence in the delivery and acceptance of the buyer as a debtor.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 229–233, 510; Dec. Dig. §§ 82, 196.*

For other definitions, see Words and Phrases, vol. 7, p. 5976.]

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio; Howard C. Hollister, Judge.

Application by the Cincinnati Railway Supply Company for an order requiring J. F. Hartlieb and others, as trustees in bankruptcy of the Platt Iron Works Company, to pay claimant the purchase price of certain materials alleged to have been sold to the bankrupt on terms cash on delivery and not paid for, though manufactured.   From a judgment denying such relief, claimant appeals.   Affirmed.

The opinion of Hollister, District Judge, referred to near the end of the opinion, is as follows:

[1] The evidence does not show such a condition of insolvency at the time the intervener's debt was contracted, or such knowledge of insolvency, as to warrant the inference that the Platt Iron Works Company had no reasonable expectation of paying the debt, and therefore in law intended not to pay.  On the contrary, the evidence shows the Platt Iron Works Company did expect to pay, and that at times between February, when the debt was contracted,

and June, when the only demand for the goods was made by the intervener (and that by a suit in replevin in the Montgomery common pleas), was in negotiation with persons in New York for the loan of large sums of money to it. The evidence shows the company expected to pay this debt out of the proceeds and so advised the intervener; hence, there is no room for the application of the doctrine of Talcott v. Henderson, 31 Ohio St. 162, 27 Am. Rep. 501; Donaldson v. Farwell, 93 U. S. 631, 23 L. Ed. 993, and similar cases.

This point was not made before the referee. It was there contended that, the sales being for cash (as they were, whether so marked on the order or bill, or not), the title did not pass, because of the noncompliance by the vendee with the condition precedent to the passing of the title, namely, payment for the goods; and therefore that the vendor could reclaim the goods, or, if they could not be found in specie, could follow them wherever they could be traced, even though they had changed their form and had become a part of manufactured goods, as in Erie R. R. Co. v. Dial, 140 Fed. 689, 72 C. C. A. 183 (C. C. A., 6th). The impossibility of tracing the particular copper and tin, which were the subjects of the sales, was made abundantly apparent by the testimony.

[2] But assuming that they could be traced, or even assuming that the actual goods were still in the hands of the trustee, it has been established by a long line of authorities that such a condition precedent may be waived by circumstances showing an intention to deliver notwithstanding the condition which could have been insisted on, and to look to the vendee as a debtor only.

These goods were sold in February. The sales agent of the intervener was at the works of the vendee as frequently as once every ten days or two weeks during a period of about four months and never during all that time made any demand for the goods, and it was not until it appeared the repeated promises of the vendee to pay seemed unlikely of fulfillment that the only demand for the goods was made, which was in the shape of a suit in replevin.

Copper and tin being expensive, it was the practice of the vendee to purchase only sufficient for its current needs. The vendor knew this. The copper and tin were used with zinc and antimony, etc., to make brass, which, in the forms it ultimately took, was used for and became parts of engines and other machinery built up of parts, of which the vendee was the manufacturer. The metal in question was thus used mostly during February and probably all of it was used before the end of March. The vendor knew the manner in which the metal sold by it would be dealt with. The first sale was February 1st. Seven days elapsed before the next sale. The third sale was eight days after that, and the fourth five days later.

If the vendor intended to rely upon its right to retake its metal in case of nonpayment in cash, in accordance with the terms of the contract, why did it, knowing the metal would lose its initial form and substance and be converted into manufactured goods of brass in small forms and shapes of less than two pounds in weight, continue to make deliveries after previous deliveries without enforcing its right to retake the goods on failure to pay within a reasonable time after each shipment?

It is abundantly proved that the vendor was relying upon the promises of the vendee to pay its debt and not upon such right as may have existed at the time of the transaction, of requiring payment at the time of delivery, or within a reasonable time thereafter, and in default thereof to take possession of the goods.

[3] It is said in Frech v. Lewis, 218 Pa. 141, 144, 145, 146, 67 Atl. 45, 46, 47 (11 L. R. A. [N. S.] 948, 120 Am. St. Rep. 864, 11 Ann. Cas. 545): "By reasonable time is to be understood such promptitude as the situation of the parties and the circumstances of the case will allow. It never means an indulgence in unnecessary delay, or in a delay occasioned by the vain hope and fruitless effort to obtain the money from the defaulting buyer. When the delay is to be accounted for by the latter consideration, it is accepted as an acquiescence in the delivery and the acceptance of the buyer as a debtor." And again: "Reliance upon a subsequent promise to pay, that leads the seller to refrain from asserting his right to retake the property, is in itself a waiver of the right, and makes absolute a delivery which in the first instance was conditional. The right of plaintiff to recover back his property after he had delivered it resulted from the buyer's failure to keep his first promise; his

failure to keep subsequent promises to pay could neither prolong nor revive that right."

The point is made that there was no consideration for the abandonment by the vendor of its initial right to repossess itself of its goods upon vendee's failure to comply with the condition of payment. It is significant that this question was not discussed in any of the numerous cases holding that the circumstances determine whether the vendor's initial right of retaking the goods has been abandoned by him. But the changed relation of the parties are not such as depend upon a new consideration, for the transaction is either one of conditional sale, if the vendor insists upon the condition, or an unconditional sale, depending upon his right to make it one or the other, at his election. If he elects to waive his right of immediate payment, then the relation of debtor and creditor arises, a relation created by the voluntary act of the vendor and growing out of the voluntary abandonment of the right to treat the sale as conditional. It is a matter of grace to the vendee involving the voluntary considerations and impulses which impel the making of a gift. Besides, the vendor may prefer to treat the goods as sold and make his profit out of the sale rather than to take back the goods. Indeed, this is exactly what happened in this case as all the facts show. That advantage to the vendor would be a consideration for his conduct in electing to treat the property as sold unconditionally. There is no room to doubt the correctness of the referee's conclusion under the circumstances of this case, and the petition for review will be dismissed at the intervener's costs.

W. J. Rielly, of Cincinnati, Ohio, for appellant.

G. R. Young, of Dayton, Ohio, for appellees.

Before WARRINGTON and DENISON, Circuit Judges, and SESSIONS, District Judge.

PER CURIAM. Appellant sought through intervention to recover certain copper and tin metal which it had delivered to the bankrupt between February 1 and 21, 1911, and the money equivalent for any that had been sold. The grounds for recovery stated were that the terms of sale were cash on delivery; that, the bankrupt having failed to pay any portion of the purchase price, appellant, after demand and refusal to return the property, had on June 29, 1911, instituted proceedings in replevin, but during pendency of the action, July 24, 1911, bankruptcy proceedings were begun against the debtor, receivers appointed, and the intervener was enjoined from further prosecution of its action. The defenses were that demand for return of the metal was not made until after it had been manufactured into castings; that neither the metal nor the castings could be identified; and that the intervener had waived compliance with the terms of sale. This the intervener in substance denied, and alleged that the bankrupt, knowing that by reason of nonpayment it had no title under the terms of sale, converted the property to its own use shortly after delivery, and that, through repeated representations of its ability and inclination to pay, had caused intervener to delay commencement of proceedings to recover the property.

The referee to whom the cause was submitted heard the testimony and made findings in substance as follows: Amount claimed was correct, and terms of sale were cash on delivery. Most, if not all, of the metal was used in the casting of small parts of bankrupt's products during February, the month of delivery, certainly within 60 days thereafter and before demand was made for its return. It was impossible to tell whether or not any of these parts were still on hand;

nor could they be traced into any particular account, or their proceeds into any particular fund. Soon after the first shipment, and at frequent later intervals, intervener urged payment of the amount due, but was put off with promises. No demand was ever made for return of the goods until June 29, 1911, when the sheriff of Montgomery county undertook to execute a writ of replevin issued at the suit of intervener; but, after seizing certain copper, he released it upon learning that it was not the copper in question, and returned the writ indorsed "goods not found in my county." In previous dealings between these parties in respect of sales on similar terms, payments were not made until the lapse of some 30 days after the respective deliveries. It had been the practice of bankrupt not to order such metals in advance of its needs, and intervener must have known that the metal in question would be quickly converted into castings.

After carefully considering the facts and making his findings, the referee delivered a creditable opinion denying relief. Judge Hollister, upon review, confirmed the findings and order of the referee in an opinion which meets with our approval. His opinion appears herewith, and the order so entered and sustained below is affirmed, with costs.